## CITY OF DALLAS v. MITCHELL et ux.
### No. 2695.

Court of Civil Appeals of Texas. Waco.
Oct. 17, 1946.

Rehearing Denied Nov. 27, 1946.

H. P. Kucera, City Atty., and A. J. Thuss, Jr., and W. K. Chapman, Asst. City Attys., all of Dallas, for appellant.

White & Yarborough and Thos. H. Howard, all of Dallas, for appellees.

TIREY, Justice.

Rufus Mitchell and wife, Cellie Mitchell, brought this suit against the City of Dallas to recover damages for diminution in the value of their automobile and for injuries received by Cellie Mitchell when their automobile, driven by their son Wesley, hit a manhole which they alleged was permitted to exist above the grade of Spring Avenue, a street in the city of Dallas. The jury answered all the issues submitted to it

favorably to the plaintiffs and fixed the loss on the car at $125 and Cellie Mitchell's damages in the sum of $1375. The court entered judgment in favor of plaintiffs against the City of Dallas for the sum of $1500. The City of Dallas duly perfected its appeal and the cause was transferred to this court by order of the Supreme Court.

■■ Points 1, 2 and 3 assail the action of the court in refusing it a new trial substantially because after the trial it was shown that the City was deprived of a trial by a fair jury of twelve men in that (a) the judgment against it was based upon findings dictated by a biased and unfair attitude of resentment held by juror Hundley growing out of what he believed to be unfair treatment at the hands of Dallas policemen by arresting him and not arresting a third party with whom the juror was involved in a controversy, and because the juror Hundley, conscious of his bias against the City, shielded his unfair attitude in that he made untruthful answers on voir dire and stated he had no feeling one way or another and never had had a controversy with the defendant, and (b) because the juror McCormack, at the time he served on the jury, was plaintiff in a case involving his personal injuries. We overrule each of these contentions.

On the motion for new trial counsel for the City took the witness stand and testified in part: "I remember specifically asking Mr. McCormack whether he had been involved in any litigation of this character. I also remember specifically asking the question of Mr. E. Estes Hundley whether or not he ever had any controversy or conflict with the City of Dallas." McCormack was tendered as a witness by the City and he testified in part to the effect that when he was taken on the jury in February, 1946, he was limping, and that Mr. Thuss did not ask him whether he had any law suit pending or not. It does appear from the juror's testimony that he had a suit pending against the Lone Star Gas Company for personal injuries sustained by him while he was their employee at the time he was accepted for jury service, but he testified that he was not asked about this matter, and that he gave truthful answers to all the questions counsel asked him touching his qualifications for jury service. Appellant also tendered Hundley as a witness. He testified in part:

"Q. Now, Mr. Hundley, you remember I asked you on voir dire examination whether or not you ever had any conflict or controversy with the City of Dallas? A. You didn't ask me that question.

"Q. You say I didn't ask you that? A. If you did I don't remember it."

It appears that Hundley was injured in a traffic accident in the City of Dallas in February, 1944, at which time a boy "ran through a red light riding a bicycle while the traffic was stopped and I (Hundley) was walking against a green light," and as a result of the accident Hundley was arrested by a policeman and carried to the city hall. The boy was not arrested. He further testified in part:

"Q. You didn't, as a result of that incident that Mr. Thuss asked you about, you didn't have any prejudice against the City of Dallas? A. Not in the world, never had anything against the City of Dallas in my life. I have been living here since 1919. Nothing against the City.

"Q. When you were taken on this jury did you have any prejudice against the City of Dallas? A. No sir.

"Q. Did you have any prejudice against the City of Dallas that affected your verdict in this case? A. No."

No record was made of the questions propounded to the jurors McCormack and Hundley touching their qualifications for jury service.

We have considered very carefully all of the testimony adduced on motion for new trial and we think it tendered only an issue of fact to the trial court as to whether or not the jurors Hundley and McCormack failed to answer truthfully the questions propounded to them touching their qualifications for jury service, and whether or not said jurors had such bias or prejudice that it affected their verdict. These questions the trial court impliedly found against appellant's contention. We think the rule announced by our Supreme Court in City of San Antonio v. McKenzie Construction

Co., 136 Tex. 315, 150 S.W.2d 989, points 1-3, page 992, as to misconduct of the jury is applicable to the situation here presented. The court said: " * * * where there is a real conflict of evidence touching the question as to whether or not misconduct of a jury actually occurred, the finding, express or implied, of the trial court on such question is final." See also Bradshaw v. Abrams, Tex.Com.App., 24 S.W.2d 372.

■ Point 5 is: "The attorney representing the appellees indulged in improper argument to the jury, in that he referred to the poverty of the plaintiffs, and to the inability of the plaintiffs to match dollars with the defendant, which improper argument requires a reversal of this case." We overrule this contention.

The argument complained of on appeal is as follows: "Gentlemen of the Jury, I submit the testimony to you. We brought everything to you that we had. Wes Mitchell was in California. We can't match dollars, and bring him here. We can't gét him here. Mr. Thuss: I want an exception to that. * * * The Court: The argument there about 'matching dollars' I sustain the objection to that. Disregard that part of the argument." We think the argument excepted to was improper but since the court promptly sustained the exception and instructed the jury to disregard that part of the argument, it does not present reversible error. Our holding is based on the recent case of King v. Federal Underwriters Exchange, Tex.Sup., 191 S.W.2d 855, points 1, 2, and cases therein cited.

■ Point 4 is: "There is no testimony from John James McDaniel, or any other witness, warranting the submission of Special Issue No. 42, requiring the jury to determine the market value of the car immediately after the accident, and a judgment based in part on the answer of the jury to this issue is erroneous." Special Issue No. 42 is: "What do you find from a preponderance of the evidence to be the reasonable cash market value in Dallas County, Texas, of the automobile of Rufus Mitchell immediately after the accident in question?" to which the jury answered "75.00." It is true that the witness did not see the car in question after the accident;

however, he did see the car a short time before the accident. He testified in one instance, after a hypothetical question was propounded to him detailing the condition of the car immediately after the accident, that he did not know the reasonable cash market value of the car as described to him, but the witness, after answering that question, said that he ·didn't understand the question and thereafter answered the question to the effect that the car would not have any reasonable cash market value. Testimony was adduced without objection to the effect that after the accident the car was sold for junk. We think the issue of reasonable cash market value of the car after the accident was tendered by the evidence; and since the jury fixed such value at $75, we do not think the City is in position to complain under the record as made.

■ Point 6 is: "The damage award of $1500.00 to plaintiffs is unsupported by any credible and disinterested testimony, and is so excessive that it shocks the sense of justice and must have been dictated by passion and prejudice." We overrule this contention.

The damages of $1500 were made up of $1375 awarded by the jury to Cellie Mitchell for pain and suffering experienced by her, and $125 damages to the car, being the difference in the reasonable cash market value of the car before and after the accident. The record shows that as a result of the accident Cellie Mitchell was thrown against the windshield with such force that she broke the windshield and sustained a cut on her forehead and an injury to her right leg. She testified in part: "Q. What, if anything, did it do to your leg? A. Well, it cut it right smart, and I guess it must have sprained it or something, or knocked it out of place. I know I can't do no good standing up on it no long time." She further testified to the effect that after she was treated at Parkland Hospital she was released and went home on a bus; that she was assisted on and off the bus by her husband and brother-in-law; that prior to the collision in 1942 she worked, washed, ironed, cleaned house and picked cotton and could do a full day's work; that she is not able to do this work now because she can't

stand up on her right leg; that when she tries to stand up on her right leg and work over an extended period of time that it pains her and swells. She further testified to the effect that after receiving the injury she was confined to her bed for a period of three weeks, during which time she was unable to do any work of any kind or character. Her husband testified to the effect that before she was injured she could pick as much cotton as he could pick, and also testified that he had watched her since the time she sustained said injuries and she now walked with a limp. So we have the record showing that Cellie Mitchell, after a period of more than three years from the date of the accident, was complaining of pain in her right leg and of it swelling up when she tried to work. Appellant on the motion for new trial tendered eight members of the jury seeking to establish bias and prejudice which would entitle it to a new trial. We think it is significant that none of the jurors testified to the effect that they did not think Cellie Mitchell sustained injuries as a result of the accident and did not want to award her any damages. The juror Fuqua, who was the most favorable to the appellant, was in favor of awarding plaintiff a nominal amount, but he testified to the effect that he agreed to award the sum of $1375. No member of the jury who testified on motion for new trial wanted to deny recovery to plaintiff for her injuries. It is true that Fuqua testified that Hundley, while in the jury room, said: "* * * he was sorry he could not give a million dollars," but no other juror testified to having heard this statement. The foreman of the jury testified in part as follows: "Q. Did Mr. Hundley say at one time that he would come down to $1500.00, but if the jury didn't hurry up and give that amount he would go back to $2500.00 and hang the jury for the rest of the time? * * * A. I wouldn't say he said he would hang the jury, but I would say this way, that he made the proposition and he said he really would prefer $2500.-00." If the jury believed that Cellie Mitchell was still suffering pain in her right leg as a result of the accident and that the injury had limited her use of the leg, we cannot say that the award is excessive. The awarding of damages for her injuries was a jury question and the evidence is sufficient to sustain the award.

Accordingly, the judgment of the trial court is affirmed.